UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL TOWNSEND PEARSON )
and )
ELI IVANOVA PEARSON )
1579 Wrights Mill Road )
Berryville, VA 22611 )
       )
      Plaintiffs )
       )
v. ) Civ. No.
       )
LEON RODRIGUEZ, Director )
U.S. Citizenship and Immigration Services )
20 Massachusetts Avenue, N.W. )
Washington, DC 20529 )
       )
SARAH TAYLOR, District Director )
U.S. Citizenship and Immigration Services )
Washington, DC District Office )
2675 Prosperity Avenue )
Fairfax, Virginia 20598 )
       )
KIMBERLY ZANOTTI, Field Office Director )
U.S. Citizenship and Immigration Services )
Washington, DC Field Office )
2675 Prosperity Avenue )
Fairfax, Virginia 20598 )
       )
JEH CHARLES JOHNSON, Secretary )
U.S. Department of Homeland Security )
650 Massachusetts Avenue, NW )
Washington, DC 20001 )
       )
ERIC H. HOLDER, JR., Attorney General )
The U.S. Department of Justice )
950 Pennsylvania Avenue, NW )
Washington, DC 20530 )
       )
      Defendants )
       )

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, MICHAEL TOWNSEND PEARSON and ELI IVANOVA PEARSON,

through undersigned counsel, complain of the Defendants, LEON RODRIGUEZ, Director, U.S.

Citizenship and Immigration Services; SARAH TAYLOR, District Director, U.S. Citizenship

and Immigration Services Washington, DC District Office; KIMBERLY ZANOTTI, Field

Office Director, U.S. Citizenship and Immigration Services Washington, DC Field Office; JEH

CHARLES JOHNSON, Secretary, U.S. Department of Homeland Security; and ERIC H.

HOLDER, JR., Attorney General, the U.S. Department of Justice, as follows:

## I. **PREFATORY STATEMENT**

1. This action is brought to protect the statutory and constitutional rights of the Plaintiffs, which

   have been abridged by the Defendants' actions in construing and applying the Adam Walsh

   Act to their immediate relative visa petition.

2. The right to marry is among the most important liberties protected by the Due Process

   Clause, and the U.S. Supreme Court has characterized marriage as the foundation of the

   family and our society. *Maynard v. Hill*, 125 U.S. 190, 210-11 (1888); *see also Loving v.*

   *Virginia*, 388 U.S. 1, 12 (1967) ("The freedom to marry has long been recognized as one of

   the vital personal rights essential to the orderly pursuit of happiness by free men."). In turn,

   the history of our immigration laws underscores the vital importance of family unity and

   preservation of the family unit. H. Rep. No. 82-1365, at 29 (1952); *see also* H. R. Rep. No.

   101-723(I), at 40 (1990) (describing family reunification as a "cornerstone of U.S.

   immigration policy"). However, marriage can only fulfill its essential societal role if spouses

   – including a U.S. citizen married to a noncitizen – are at liberty to live together. *See Moore*

   *v. City of East Cleveland*, 431 U.S. 494, 500-03 (1977) (holding that the right to marriage

   includes the associational right of a husband and wife to live together without arbitrary

   governmental restriction). The right to live with one's spouse, whether citizen or noncitizen,

   is an established constitutional right that the government may not arbitrarily restrict or deny;

   any interference with that fundamental liberty interest requires evidence that a valid

   restriction applies. *See Griswold v. Conn.*, 381 U.S. 479, 495 (1965) ("The entire fabric of

the Constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected."). Here, no such evidence has been adduced by the Defendants to support denial of the Plaintiffs' visa petition – and consequent interference with their right to live together in this country as husband and wife – under the Adam Walsh Act.

3. This civil action is brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, the federal question statute, 28 U.S.C. § 1331, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, and the Constitution of the United States, seeking review of a decision by Defendant U.S. Citizenship and Immigration Services ("USCIS") denying a Form I-130 Petition for Alien Relative ("I-130 Petition") filed by the U.S. citizen Plaintiff, Michael Pearson, on behalf of his noncitizen spouse, Plaintiff Eli Pearson. On March 27, 2013, Defendant USCIS denied Mr. Pearson's petition for his spouse because it found that he is barred from filing such petition owing to his past conviction for a "specified offense against a minor," as defined in the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 8 U.S.C. § 1154(a)(1)(A)(viii). The I-130 Petition, if approved, would have conferred "immediate relative" status, pursuant to 8 U.S.C. § 1151(b)(2)(A)(i), on Ms. Pearson. "Immediate relative" status permits a noncitizen to apply for lawful permanent residence and, eventually, U.S. citizenship.

4. Defendant USCIS's denial of Mr. Pearson's I-130 Petition on behalf of his spouse is arbitrary and capricious, not in accordance with law, and in excess of statutory jurisdiction and authority, in violation of Section 706(2) of the APA. 5 U.S.C. § 706(2). In addition, the agency's decision is in violation of the Plaintiffs' liberty interests protected by the Due

Process Clause of the Fifth Amendment of the U.S. Constitution. *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982) (holding that the right to live with and not be separated from one's immediate family is "a right that ranks high among the interests of the individual" and that cannot be taken away without procedural due process).

5. Defendants' action has caused – and will continue to cause – irreparable harm to the Plaintiffs. Defendants' denial of the I-130 Petition prevents Mr. Pearson's spouse from obtaining lawful status in the United States, which is their home. Defendants' unreasonable action prevents Mr. and Ms. Pearson, who have been married for more than three years, from residing together as husband and wife and continuing to build their lives together in the United States. Consequently, the Plaintiffs seek declaratory and injunctive relief as detailed in this complaint.

## II. JURISDICTION

6. The Plaintiffs seek judicial review under 5 U.S.C. § 701 *et seq.*, the Administrative Procedure Act ("APA"), and 28 U.S.C. § 1331 (federal subject matter jurisdiction), as well as 8 U.S.C. § 1101 *et seq.,* the Immigration and Nationality Act ("INA"), and the Constitution of the United States. Original jurisdiction is vested in this Court by 8 U.S.C. § 1329 (jurisdiction of the district courts), 28 U.S.C. § 1346(a)(2) (civil actions against the United States), and 28 U.S.C. § 2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

### A.  Subject Matter Jurisdiction

7. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" includes "the whole or part of

4

an agency rule, order, license, sanction, relief, or the equivalent or denial therefore, or failure to act." 5 U.S.C. § 551(13). Agency action subject to judicial review includes the denial of a Form I-130, Petition for Alien Relative filed pursuant to Section 204(a)(1)(A)(i) of the INA, 8 U.S.C. § 1154(a)(1)(A)(i), because USCIS's denial of the Petition constitutes a "final agency action for which there is no other adequate remedy in a court…." 5 U.S.C. § 704. The standards to be applied on review are governed by 5 U.S.C. § 706. *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).

8. The APA does not independently provide a basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). However, the federal question statute, codified at 28 U.S.C. § 1331, gives federal courts jurisdiction over a suit that arises under a right of action created by the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331.").

9. Federal courts review administrative actions under the APA to determine whether the agency acted arbitrarily, capriciously, abused its discretion, or acted otherwise not in accordance with law. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citing 5 U.S.C. § 706(2)(A)). The requirement that agency action not be arbitrary and capricious requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). Moreover, the agency must take appropriate steps to explain its actions in a manner that "will enable the court to evaluate the agency's rationale" at the time of its decision. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990).

10. Three well-established canons of statutory construction also support the Court's assertion of subject matter jurisdiction. *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (noting that "executive determinations generally are subject to judicial review."). First, congressional intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial review. *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 63-64 (1993); *Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991). Second, there is a "strong presumption" in favor of judicial review of administrative acts. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *Kucana*, 558 U.S. at 241. Third, as a general rule, courts resolve ambiguities in immigration laws in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). These principles support the Court's assertion of subject matter jurisdiction to review the Plaintiffs' claims.

11. Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"As the present action is not an action to review a removal order but an action challenging a decision by Defendant USCIS to deny a Form I-130 Petition for Alien Relative, which denial was arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of statutory authority, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201. *See* 8 U.S.C. § 1154; 8 C.F.R. §§ 204.1, 204.2(a); *see also Kucana*, 558 U.S. at 244-251.

12. Section 204(a)(1)(A)(i) of the INA provides that "any citizen of the United States" may initiate the classification of INA-defined family members by filing a petition with the government. 8 U.S.C. § 1154(a)(1)(A)(i). In turn, the Adam Walsh Act, which amended INA § 204 and is codified at 8 U.S.C. § 1154(a)(1)(A)(viii), provides that the Department of Homeland Security ("DHS") cannot approve I-130 Petitions filed by U.S. citizens who have been convicted of a "specified offense again a minor" unless DHS determines, "in [its] sole and unreviewable discretion," that the U.S. citizen "poses no risk" to his or her alien immediate relative. 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(A)(viii). In effect, the Adam Walsh Act amendments subject the broad principle articulated in INA § 204 – that "any citizen" may seek unification with his or her family member – to an exception (the "conviction" clause), which is itself subject to an exception (the "no risk" clause).

13. In its decision denying the I-130 Petition, USCIS found that Mr. Pearson was convicted of a "specified offense against a minor" because his offense "meets the definition in Section 111(7) in the Adam Walsh Act as 'any conduct that by its nature is a sex offense against a minor.'" USCIS Decision Denying Petition for Alien Relative ("USCIS Dec."), at 3. The agency determined further that Mr. Pearson failed to demonstrate, "beyond any reasonable doubt," that he poses no risk to Ms. Pearson, the intended beneficiary. *Id.* at 4, 5. The agency's decision was affirmed on appeal by the Board of Immigration Appeals ("BIA") in a decision dated December 11, 2014 ("BIA Dec.").

14. Neither 8 U.S.C. § 1252(a)(2)(B)(ii) nor APA § 701(a) deprives this Court of jurisdiction over the present action, because the Plaintiffs do not seek review of USCIS's discretionary "no risk" determination in their particular case. Review of that discretionary determination is precluded under both the INA and the APA. 8 U.S.C. § 1252(a)(2)(B)(ii); APA § 701(a).

Rather, the Plaintiffs challenge the agency's decision on the following grounds: (1) USCIS erred as a matter of law in determining that Mr. Pearson's 1991 conviction qualifies as a "specified offense against a minor," and thus is subject to the statute's conviction clause, barring him from filing an immediate relative visa petition on behalf of his spouse under INA § 204(a)(1)(A)(viii); (2) USCIS erred in denying the Plaintiffs' I-130 Petition under INA § 204(a)(1)(A)(viii), because Mr. Pearson's conviction occurred 15 years prior to the effective date of the Adam Walsh Act and applying the law's INA amendments to such a pre-enactment conviction would produce an impermissible retroactive effect; (3) USCIS erred in denying the Plaintiffs' I-130 Petition because it acted in excess of its delegated authority in interpreting and applying the "no risk" clause, and thus its implementation of the INA's Adam Walsh Act amendments is *ultra vires* to the statute; (4) The administrative scheme under which USCIS has implemented the Adam Walsh Act amendments to the INA, as applied to deny the Plaintiffs' I-130 Petition, arbitrarily interferes with Mr. Pearson's constitutionally protected liberty interest in marriage and family life – in particular, his right to live together with his wife in the United States. *See Landon*, 459 U.S. at 34-35; *Moore*, 431 U.S. at 500-03; *see also Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974) (holding that freedom of personal choice in matters of marriage and family life is one of the fundamental liberties protected by the Due Process Clause).

15. As the Supreme Court has made clear, a federal district court has jurisdiction over an original suit to set aside an agency determination made in excess of the agency's delegated powers. *Leedom v. Kyne*, 358 U.S. 184, 190-91 (1958). The Court explained that where an action does not seek review of a decision made within the agency's authority, but instead challenges a decision as having been made in excess of the agency's delegated powers, the courts retain

jurisdiction over such a suit. *Id.* at 189-90 ("This Court cannot lightly infer that Congress

does not intend judicial protection of rights it confers against agency action taken in excess

of delegated powers.").

16. In addition, a marriage-based I-130 petition is a nondiscretionary application, and this Court

retains jurisdiction to review USCIS's denial of such a petition. Unlike discretionary

applications for immigration benefits such as adjustment of status under 8 U.S.C. § 1255,

cancellation of removal under 8 U.S.C. § 1229a, or a waiver of inadmissibility under 8

U.S.C. § 1182(h) – all of which are sought by *noncitizens* – an I-130 immediate relative

petition is a nondiscretionary application to which the *U.S. citizen* petitioner has a right and a

protected liberty interest. *See Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013); *see

also* Kerry Abrams, *Immigration Law and the Regulation of Marriage*, 91 Minn. L. Rev.

1625, 1646-47 (2007) ("[I]f the law in question has nothing to do with the exclusion of

immigrants or the deportation of immigrants, but instead regulates the lives of citizens – then

the plenary power doctrine may not apply at all, and Congress may be overstepping its

bounds."). As one federal circuit court recently declared,

> Immediate relative status for an alien spouse is a right to which citizen applicants
> are entitled as long as the petitioner and spouse beneficiary meet the statutory and
> regulatory requirements for eligibility. This protected interest is entitled to the
> protections of due process.

*Id.* This is so notwithstanding the disqualifying language of the Adam Walsh Act at INA §

204(a)(1)(A)(viii). In *Ching v. Mayorkas*, the U.S. Court of Appeals for the Ninth Circuit

rejected the government's argument that when an exception to eligibility exists, the U.S.

citizen petitioner's right to obtain the I-130 petition no longer exists, and the process is no

longer discretionary. *Id.* The court explained:

This argument confuses the question of whether there is a protected interest in a benefit with the question of eligibility for that benefit. Virtually no government benefit is available to individuals without a requirement that certain conditions are met. The Supreme Court explained that "the welfare recipients in *Goldberg v. Kelly* [397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. *But we held that they had a right to a hearing at which they might attempt to do so.*"

*Id.* (emphasis added).

17. The issues over which the Plaintiffs seek judicial review – (1) whether Mr. Pearson's conviction qualifies as a "specified offense against a minor"; (2) whether applying the INA's Adam Walsh Act amendments to Mr. Pearson's 1991 conviction yields an impermissible retroactive effect; (3) whether USCIS's implementation of the Adam Walsh Act exceeds its delegated authority and is *ultra vires*; and (4) whether the agency's interpretation and application of the Adam Walsh Act is unconstitutional as a violation of the Plaintiffs' due process rights – are predicate legal question over which this Court retains jurisdiction. *See IQ Sys., Inc. v. Mayorkas*, 667 F. Supp. 2d 105, 109 (D.D.C. 2009) (holding that district courts "have jurisdiction to review decisions on visa petitions when the decision is based on a question of law"). As this Court has explained, "Federal courts have jurisdiction to review a 'predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief.'" *Id.* (quoting *El-Baz Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *see also Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B) does not bar jurisdiction over nondiscretionary legal decisions); *Succar v. Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005) ("Both the Supreme Court and this court have consistently rejected arguments that Congress has eliminated judicial review of the legal question of interpretation of the statute as to whether an alien is eligible for consideration of

relief." ). Because the Plaintiffs do not seek review of the agency's exercise of discretion in denying their I-130 Petition for failure to meet the "no risk" standard, but rather of legal and constitutional claims that challenge the agency's application of the INA's Adam Walsh Act amendments to the Plaintiffs' circumstances, jurisdiction in this Court endures.

18. The agency's administrative scheme is not guided by any implementing regulations, is applied pursuant to agency memoranda that impose a legal standard of proof – "beyond any reasonable doubt" – that does not exist anywhere in the INA or the Adam Walsh Act and thus is *ultra vires*, is impermissibly retroactively as applied to convictions (like Mr. Pearson's) entered prior to enactment of the Adam Walsh Act, and is interpreted and applied more broadly than is warranted to protect the legitimate interests underlying Congress's enactment of the Adam Walsh Act. USCIS's application of that scheme to deny the Plaintiffs' I-130 Petition is a final agency action subject to judicial review under the APA when there is no other adequate remedy and federal question jurisdiction under 28 U.S.C. § 1331 applies. *See IQ Sys., Inc.*, 667 F. Supp. 2d at 109 (citing *Califano*, 430 U.S. at 107).

    **B.    Standing**

19. The Plaintiffs have standing to complain because they have suffered an injury in fact – denial of the I-130 Petition Mr. Pearson filed on behalf of his spouse – that is fairly traceable to the challenged conduct of the Defendants and can likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) injury in fact, (2) a causal connection between the injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision); *Kurapati v. USCIS*, 767 F.3d 1185, 1189-90 (11th Cir. 2014) (same); *Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (same). USCIS's denial of the Plaintiffs' I-130 Petition prevents Ms. Pearson from obtaining lawful status and residing with her

husband, a native-born U.S. citizen, in the United States. Thus, the Plaintiffs have "alleged

such a personal stake in the outcome of the controversy as to warrant [their] invocation of

federal court jurisdiction and to justify exercise of the court's remedial powers on [their]

behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 398 U.S. 186,

204 (1962)). A favorable decision by this Court will grant Plaintiffs the relief they seek –

namely, reversal of USCIS's erroneous decision and a remand to the agency for re-

adjudication and approval of the I-130 Petition.

### C.    Finality and Ripeness

20. USCIS's action denying Plaintiffs' I-130 Petition constitutes "final agency action" for

purposes of APA review. *See* 5 U.S.C. § 704. USCIS denied Mr. Pearson's I-130 Petition on

behalf of his wife on March 27, 2013. In its decision denying the petition, USCIS, as required

by its own agency guidance, instructed the Plaintiffs to file an appeal with the BIA within

thirty days of the denial. USCIS Dec. at 5-6. The Plaintiffs filed a timely appeal and more

than a year and a half later, on December 11, 2014, the BIA issued a decision affirming the

agency's decision and dismissing the appeal. BIA Dec. at 2. In its decision, the BIA

concluded that Mr. Pearson's past conviction constitutes a "specified offense against a

minor," triggering the Adam Walsh Act amendments to INA § 204, and cited a lack of

jurisdiction to review USCIS's "no risk" determination or its application of the "beyond any

reasonable doubt" standard of proof. *Id.* at 1-2. The denial of the Plaintiffs' petition is

therefore a final agency decision, and the Plaintiffs have exhausted their administrative

remedies.

21. Likewise, USCIS's decision denying the Plaintiffs' I-130 Petition is ripe for review.

Determining the ripeness of administrative action for judicial review requires evaluation of

(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The Plaintiffs' claims are fit for judicial decision because the dispute presents legal questions and constitutional claims and there is a "concrete dispute" between the parties. *Id.* at 812. Furthermore, the Plaintiffs will continue to suffer significant hardship if no court reviews the denial of their I-130 Petition.

22. The Plaintiffs have "no other adequate remedy in a court" to challenge USCIS's erroneous denial of the I-130 Petition that Mr. Pearson filed on behalf of his wife. *See* 5 U.S.C. § 704. There is no other adequate remedy in court that would prohibit APA review because the INA does not provide for federal court review of the denial of visa petitions. *See* 8 U.S.C. §§ 1151-1378. The option available to Mr. Pearson to submit a new I-130 Petition on behalf of his spouse, and eventually obtain a decision on that petition, would not relieve the hardship caused if this Court withholds consideration of the Plaintiffs' claims that the agency's decision was erroneous and should be reversed. *See Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d Cir. 2008).

### III. **VENUE**

23. Venue is proper under 28 U.S.C. § 1391(e)(3) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Defendants reside.

### IV. **PARTIES**

24. The Plaintiffs, MICHAEL TOWNSEND PEARSON and ELI IVANOVA PEARSON, are husband and wife who currently reside in Berryville, Virginia. Mr. Pearson was born in Winchester, Virginia and is a United States citizen. Ms. Pearson was born in Sofia, Bulgaria

and came to the U.S. on June 4, 2011. The Pearsons were married in Winchester, Virginia on December 20, 2011. They have no children.

25. The Defendants, LEON RODRIGUEZ, Director, U.S. Citizenship and Immigration Services; SARAH TAYLOR, District Director, U.S. Citizenship and Immigration Services Washington, DC District Office; KIMBERLY ZANOTTI, Field Office Director, U.S. Citizenship and Immigration Services Washington, DC Field Office; JEH CHARLES JOHNSON, Secretary, U.S. Department of Homeland Security; and ERIC H. HOLDER, JR., Attorney General, the U.S. Department of Justice, are charged by law with the statutory and regulatory obligation to determine eligibility for I-130 Petitions for Alien Relative for "immediate relatives," pursuant to 8 U.S.C. § 1154 and 8 C.F.R. §§ 204.1, 204.2(a).

## V. <u>STATEMENT OF FACTS</u>

26. Plaintiff Michael Pearson met his wife, Plaintiff Eli Ivanova Pearson, in the summer of 2008 when she was working in New Jersey on a valid J-1 exchange visitor visa. They married on December 20, 2011 and have resided together in Virginia ever since. On February 17, 2012, Mr. Pearson filed with USCIS a Form I-130, Petition for Alien Relative, on behalf of Ms. Pearson (hereinafter the "I-130 Petition"). The I-130 Petition was supported by all required evidence and fees, including ample proof that the Pearsons' marriage is bona fide. On June 12, 2012, the couple appeared as instructed for an interview at the USCIS Washington, DC District Office.

27. On July 11, 2012, USCIS issued a Notice of Intent to Deny ("NOID") and afforded Mr. Pearson 87 days to file a response. The NOID requested that Mr. Pearson submit evidence relating to a 1991 conviction for rape, in violation of section 18.2-61 of the Virginia Code, and demonstrate why the conviction is not a "specified offense against a minor" as defined

by the Adam Walsh Act. In addition, USCIS requested that Mr. Pearson submit evidence that demonstrates, "beyond any reasonable doubt, that you pose no risk to the safety and well-being of the beneficiary."

28. On October 9, 2012, Mr. Pearson timely responded to the NOID and submitted the following documents related to his 1991 conviction: the indictment, court order and sentence, jury instructions, court trial transcripts, post-trial arguments, adjudication and sentencing documents, and a copy of section 18.2-61 of the Virginia Code, which defines the crime of rape. Additionally, Mr. Pearson submitted signed statements from his psychologist, his wife, and other relatives, friends, acquaintances, and former employers and co-workers. He also provided evidence that he obtained his GED and took some college courses, proof that he completed an alcohol and drug rehabilitation program in 1988, further evidence of his bona fide marriage, and tax records to demonstrate a stable employment history.

29. On March 27, 2013, USCIS issued a decision denying the Plaintiffs' I-130 Petition. According to the decision, the offense of which Mr. Pearson was convicted in 1991 qualifies as a "specified offense against a minor" as defined in the Adam Walsh Act. USCIS Dec. at 2. The decision states:

> A petitioner who has been convicted of a "specified offense against a minor" is presumed to be ineligible to petition for family-based benefits. To avoid the denial of a family-based visa petition, a petitioner who has been convicted of a "specified offense against a minor" must submit evidence that demonstrates, beyond any reasonable doubt, that he or she poses no risk to the beneficiary.

*Id.* at 3. Furthermore, the decision states: "Having considered the totality of the evidence submitted, USCIS concludes, in its exercise of sole and unreviewable discretion, that you have failed to demonstrate that you pose no risk to the beneficiary." *Id.* at 5. Accordingly, USCIS denied the I-130 Petition.

30. On April 19, 2013, Mr. Pearson filed a timely appeal of the agency's decision with the BIA.
    Both parties submitted briefs, and on December 11, 2014, the BIA issued a decision
    dismissing the appeal and "declin[ing] to disturb" the I-130 denial issued by USCIS. BIA
    Dec. at 1. First, the BIA found "unavailing" Mr. Pearson's challenge to the retroactive effect
    of section 402 of the Adam Walsh Act, concluding that the provision "does not have an
    impermissible retroactive effect when applied to convictions that occurred before its
    enactment." *Id.* Second, the BIA rejected Mr. Pearson's argument that a categorical approach
    should be applied to determine whether his past conviction constitutes a "specified offense
    against a minor" as defined by Section 111(7) of the Adam Walsh Act, ruling instead that a
    "circumstance-specific" approach may be used "to determine both the age of the victim and
    the conduct underlying the offense." *Id.* at 1, 2. Third, the BIA rejected Mr. Pearson's
    argument that USCIS erred in applying a "beyond any reasonable doubt" standard of proof to
    determine whether a petitioner has demonstrated that he or she poses "no risk" to the safety
    and well-being of the beneficiary, and erred further in concluding that Mr. Pearson failed to
    establish that he poses "no risk" to his wife, the beneficiary of the petition. *Id.* at 2.
    According to the decision,

    > [T]he Board lacks jurisdiction to review the Director's "no risk" determination,
    > including the appropriate standard of proof to be applied. That determination has
    > been delegated to the "sole and unreviewable discretion" of the United States
    > Citizenship and Immigration Services.

    *Id.* (citing *Matter of Aceijas-Quiroz*, 26 I&N Dec. 294, 297 (BIA 2014)).

31. Having exhausted all administrative remedies, the Plaintiffs seek review of the agency's
    decision in this Court.

## VI.  CAUSE OF ACTION

32. The Plaintiffs allege four grounds for relief. First, USCIS erred in finding that Mr. Pearson's

    1991 Virginia conviction for rape qualifies as a "specified offense against a minor" and that

    he is, therefore, subject to the conviction clause in INA § 204(a)(1)(A)(viii). Second, the

    agency's denial of the Plaintiffs' I-130 Petition under the Adam Walsh Act, based on a

    conviction entered 15 years prior to its enactment, is an impermissible retroactive application

    of the law. Third, USCIS's implementation of the INA's Adam Walsh Act amendments,

    including its determination of whether an I-130 petitioner poses "no risk" to the beneficiary,

    exceeds the scope of the statute and the agency's delegated authority and is therefore *ultra*

    *vires*. Fourth, USCIS's application of the INA's Adam Walsh Act amendments to deny the

    Plaintiffs' I-130 Petition is a violation of Mr. Pearson's constitutionally protected liberty

    interest in marriage and family life, in particular his due process right to reside with his

    spouse in the United States without arbitrary governmental interference.

### A.  Standards for Form I-130, Petitions for Alien Relative and the Adam Walsh Amendments to the INA

33. Section 204(a) of the INA, codified at 8 U.S.C. § 1154(a), states that any citizen of the

    United States may file a petition for an "immediate relative," defined in 8 U.S.C. §

    1151(b)(2)(A)(i) as the U.S. citizen's child or spouse. The Attorney General "shall" grant the

    petition if the facts set forth – that the beneficiary actually is the petitioner's spouse or child –

    are true. 8 U.S.C. § 1154(b). The Attorney General does not have discretion whether to grant

    an I-130 petition if the petitioner is lawfully married to the beneficiary, is the biological or

    adoptive parent of the child beneficiary, or is the lawful step-parent of the child beneficiary.

34. The Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") was signed into law

    on July 27, 2006, in an effort to protect children from sexual exploitation and violent crime,

prevent child abuse and child pornography, promote internet safety, and honor the memory

of Adam Walsh and other child victims of crime. *See* Adam Walsh Child Protection and

Safety Act of 2006, Pub. L. 109-248, 120 Stat. 587 (July 27, 2006) ("Adam Walsh Act").

Sections 402(a) and (b) of the Adam Walsh Act amended sections 101(a)(15)(K),

204(a)(1)(A), and 204(a)(1)(B)(i) of the INA, 8 U.S.C. §§ 1101(a)(15)(K), 1154(a)(1)(A),

1154(a)(1)(B)(i). The amendments prohibit any U.S. citizen who has been convicted of a

"specified offense against a minor" from filing an I-130 petition on behalf of an immediate

relative "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable

discretion, determines that the citizen poses no risk to the alien[.]" 8 U.S.C. §

1154(a)(1)(A)(viii).

35. The term "specified offense against a minor" is defined by Section 111(7) of the Adam

Walsh Act to include any of the following offenses against a victim who has not attained the

age of 18 years:

> (A) An offense (unless committed by a parent or guardian) involving kidnapping;
> (B) An offense (unless committed by a parent or guardian) involving false
> imprisonment;
> (C) Solicitation to engage in sexual conduct;
> (D) Use in sexual performance;
> (E) Solicitation to practice prostitution;
> (F) Video voyeurism as described in 18 USC § 1801;
> (G) Possession, production, or distribution of child pornography;
> (H) Criminal sexual conduct involving a minor, or the use of the Internet to
> facilitate or attempt this conduct;
> (I) Any conduct that by its nature is a sex offense against a minor.

A conviction for a specified offense triggers the "conviction" clause in section 204 of the

INA and, in turn, the "no risk" clause creates an exception for U.S. citizens with such a

conviction. *See* 8 U.S.C. § 1154(a)(1)(A)(viii).

36. USCIS did not promulgate regulations to guide the application and interpretation of the Adam Walsh Act amendments to the INA, and to date no regulations exist to implement them. The only guidance issued by USCIS with respect to applying the "no-risk determination" in specific cases are the following two agency memoranda: (1) Michael Aytes, Assoc. Dir., Domestic Operations, *Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiancé under the Adam Walsh Child Protection and Safety Act of 2006* (Feb. 8, 2007) (hereinafter "Aytes Memo"); and (2) Donald Neufeld, Acting Assoc. Dir., Domestic Operations, *Transmittal of SOP for Adjudication of Family-Based Petitions under the Adam Walsh Child Protection and Safety Act of 2006* (Sept. 24, 2008) (hereinafter "Neufeld Memo").

37. In the Neufeld Memo, USCIS announced that the legal standard of proof to be applied in making the "no risk" determination is "beyond any reasonable doubt." Neufeld Memo at 7. The memorandum instructs USCIS adjudicators that a petitioner convicted of a specified offense against a minor must show "beyond any reasonable doubt, that he or she poses no risk to the safety or well-being of his or her intended beneficiary(ies)." *Id.* In the "no risk" determination, the petitioner must submit evidence of counseling, certified evaluations of psychiatrists or clinic psychologists, evidence of good and exemplary service to the community, certified copies of police reports and court records, and news accounts and trial transcripts describing the nature and circumstances of the petitioner's offense. *Id.* at 8. The Neufeld Memo instructs further that "given the nature and severity of many of the underlying offenses and the intent of the AWA, approval recommendations should be rare." *Id.* at 2.

**B. Mr. Pearson Has Not Been Convicted of a "Specified Offense Against a Minor"**

*1. DHS must demonstrate by clear and convincing evidence that the Adam Walsh Act amendments apply to a U.S. citizen petitioner*

19

38. At the outset, the Plaintiffs note that in applying the Adam Walsh Act amendments to the INA, USCIS has impermissibly shifted the burden of proof from DHS to the U.S. citizen petitioner who has filed an I-130 petition seeking immediate relative status for his or her noncitizen family member. In general, "[a]n applicant or petitioner must establish that he or she is eligible for the requested benefit." 8 C.F.R. § 103.2(b)(1); *see also Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1996) (holding that in visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefit sought). In its decision denying Mr. Pearson's I-130 Petition, USCIS declared: "A petitioner who has been convicted of a specified offense against a minor, as defined by the Adam Walsh Act, has the additional burden of proving beyond any reasonable doubt that he she poses no risk to the safety or well-being of the beneficiary." USCIS Dec. at 5. However, the Adam Walsh Act amendments do not alter the burden of proof for the core, affirmative criteria that each U.S. citizen must prove to classify an alien relative under 8 U.S.C. §1154(a)(1)(A). A citizen must still establish (1) that he or she is in fact a U.S. citizen, and (2) that the qualifying relationship exists between the petitioner and the relative.

39. The Adam Walsh Act does not add an additional ground of "eligib[ility]" subject to 8 C.F.R. § 103.2(b), but instead creates a ground of disqualification that precludes an otherwise eligible citizen from submitting a family-based petition, absent receipt of a waiver. Rather than adding a substantive requirement to the definition of an immediate relative, or an additional ground of eligibility for petitioners, the Adam Walsh Act provides that the applicable statutory section "shall not apply" to certain U.S. citizens. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Thus, rather than establishing an additional affirmative requirement for eligibility that a *petitioner* must meet pursuant to 8 C.F.R. § 103.2(b), the Adam Walsh

Act establishes a ground of *disqualification* for an otherwise eligible petitioner. The burden of proof set forth at 8 C.F.R. § 103.2(b) is therefore inapplicable. Accordingly, to square the Adam Walsh Act amendments with other provisions of the INA, the burden properly falls on DHS to prove, by clear and convincing evidence, that a petitioner has been convicted of a "specified offense against a minor."

40. In the absence of express Congressional direction, federal courts place on the government the burden of establishing, by clear and convincing evidence, facts that lead to the abridgement of important individual rights. Thus, in removal proceedings, the government must demonstrate by clear and convincing evidence that an alien has been convicted of a crime triggering deportability. *See* INA § 240(c)(3), 8 U.S.C. §1229(c)(3). Although this requirement is now codified by statute, it has its roots in Supreme Court precedent interpreting a statute that, like the Adam Walsh Act, was silent on the question. *See Woodby v. INS*, 385 U.S. 276, 286 (1966). Likewise, when the rights of lawful permanent residents ("LPRs") are implicated at the border, the burden falls on the government to prove the adverse evidence. *See, e.g., Matadin v. Mukasey*, 546 F.3d 85, 90-91 (2d Cir. 2008) (government must prove by clear and convincing evidence that a returning LPR is inadmissible); *Hana v. Gonzales*, 400 F.3d 472, 475 (6th Cir. 2005) (same); *Matter of Rivens*, 25 I&N Dec. 623 (BIA 2011) (same). These decisions demonstrate the presumption that when a government classification implicates important rights, the government bears a heightened burden of demonstrating the adverse facts.

41. The liberty interests protected by imposing the burden of proof on the government are significant. As the Supreme Court has recognized, "drastic deprivations [] may follow when a resident of this country is compelled by our Government to forsake all the bonds formed

21

here and go to a foreign land where he often has no contemporary identification." *Woodby*,

385 U.S. at 285. The inability to petition for an alien spouse implicates liberty interests that

are equally compelling. That a "specified offense" conviction restricts the rights of *U.S.*

*citizens* further supports placing the burden on the government to establish such a

conviction.[1]

42. Here, USCIS improperly placed the burden on the Plaintiffs to demonstrate that Mr.

Pearson's conviction is *not* a "specified offense against a minor" as defined in the Adam

Walsh Act. This Court should remand to the agency with instructions requiring DHS to

prove, by clear and convincing evidence, that the Adam Walsh Act amendments *do* apply to

the Plaintiffs' I-130 Petition.

### 2. The categorical approach must be used to determine whether Mr. Pearson's past conviction qualifies as a "specified offense against a minor"

43. Only certain convictions trigger the Adam Walsh Act's immigration provisions: those that

match one of the nine "specified offense[s] against a minor." 8 U.S.C. §

1154(a)(1)(A)(viii)(I). The term "specified offense against a minor" is defined by Section

111(7) of the Adam Walsh Act, codified at 42 U.S.C. § 16911(7), which provides:

> EXPANSION OF DEFINITION OF "SPECIFIED OFFENSE AGAINST A
> MINOR" TO INCLUDE ALL OFFENSES BY CHILD PREDATOR. – The term
> "specified offense against a minor" means an offense against a minor that
> involves any of the following:
> (A) An offense (unless committed by a parent or guardian) involving kidnapping;
> (B) An offense (unless committed by a parent or guardian) involving false
> imprisonment;
> (C) Solicitation to engage in sexual conduct;
> (D) Use in sexual performance;
> (E) Solicitation to practice prostitution;
> (F) Video voyeurism as described in 18 USC § 1801;

---

[1] Apart from perhaps denaturalization, which requires the government to support its findings of fact by clear and convincing evidence, see *Schneiderman v. United States*, 320 U.S. 118, 123 (1943), no provision in the INA contains consequences more severe for a U.S. citizen than the inability to petition for his or her own spouse.

(G) Possession, production, or distribution of child pornography;
(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt this conduct;
(I) Any conduct that by its nature is a sex offense against a minor.

Apart from the exception for kidnapping and false imprisonment "committed by a parent or guardian" at subsections (A) and (B), the Court should apply a categorical approach to determine whether a conviction is for a "specified offense."

44. Several indicia apparent on the face of the statute signify that a categorical approach is required as to the generic "offense against a minor" and the enumerated categories. First, the Adam Walsh Act provisions in section 204 of the INA are only triggered by a *conviction*. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The "convicted of" textual predicate has a long history in the INA and is a well-accepted Congressional shorthand for a categorical comparison of the crime of conviction with the generic offense. *See Matter of Velasquez-Herrera*, 24 I&N Dec. 503, 513 (BIA 2008) ("For nearly a century, the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a 'conviction' for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien has been *convicted*, to the exclusion of any other criminal or morally reprehensible acts he may have *committed*."). As the Supreme Court recently explained, "The categorical approach has a long pedigree in our Nation's immigration law. ... The reason is that the INA asks what offense the noncitizen was "convicted of" ... not what acts he committed. '[C]onviction' is 'the relevant statutory hook.'" *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013) (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)). Multiple federal circuit courts likewise have found that use of the "convicted of" language in the INA

mandates a categorical, rather than a circumstance-specific, approach and forecloses any inquiry into evidence outside the record of conviction.[2]

45. Notably, USCIS's own internal agency guidance recognized that the core principle of the categorical approach applies to the "specified offense against a minor" analysis. *See* Aytes Memo at 3 ("As defined in the relevant criminal statute, for a conviction to be deemed a specified offense against a minor, the *essential elements* of the crime for which the petitioner was *convicted* must be substantially similar to an offense defined as such in the Adam Walsh Act.") (Emphasis added). Nothing in the statute suggests that Congress's use of the term "convicted of" in INA § 204 would mean anything different from its use elsewhere in the INA. *See Lorillard Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580 (1978) (Congress is presumed to be aware of the legal landscape in which it legislates, including case law).

46. Second, the Supreme Court has outlined the exception to the categorical approach that proves the rule. In *Nijhawan v. Holder*, 557 U.S. 29 (2009), the Court held that in deciding whether a noncitizen's conviction was "an offense that … involves fraud or deceit in which the loss to the … victims exceeds $10,000" – thereby triggering the aggravated felony provision at INA § 101(a)(43)(M)(i) – adjudicators could look beyond the elements of the statute to determine whether the $10,000 loss threshold had been met. *Id.* at 38-40. In so holding, however, *Nijhawan* emphasized that this "circumstance-specific" approach was required in order to give the provision effect, because at the time it was added to the INA's aggravated felony

---

[2] *See, e.g.*, *Silva-Trevino v. Holder*, 742 F.3d 197, 200-06 (5th Cir. 2014); *Olivas-Motta v. Holder*, 746 F.3d 907, 911-16 (9th Cir. 2013) (amended opinion); *Prudencio v. Holder*, 669 F.3d 472, 480-84 (4th Cir. 2012); *Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1307-11 (11th Cir. 2011); *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 472-82 (3d Cir. 2009).

definition, virtually no state or federal laws contained the $10,000 monetary loss threshold as an element of the offense. *Id.* at 39. The Court reaffirmed that other aggravated felony provisions, including INA § 101(a)(43)(A), "sexual abuse of a minor," "must refer to generic crimes" and are properly applied using a categorical approach. *Id.* at 37. Indeed, the Supreme Court did not disturb use of the categorical approach for the "involves fraud or deceit" elements of INA § 101(a)(43)(M)(i), demonstrating that even within a specific offense provision, the analysis proceeds on a clause-by-clause basis. *Id.* at 38-39; *see also Moncrieffe*, 133 S. Ct. at 1691.

47. Applying the *Nijhawan* framework to the Adam Walsh Act's "specified offense against a minor" definition, it becomes clear that only two provisions are partially susceptible to a circumstance-specific inquiry – the exception for kidnapping and false imprisonment "committed by a parent or guardian" outlined at subsections (A) and (B). To determine whether a parent or guardian "committed" the offense, use of a circumstance-specific approach is required because the elements of kidnapping and false imprisonment do not necessarily make the relationship between the victim and perpetrator an element of the crime; limiting the analysis to these elements alone would, therefore, negate the exception.

48. Besides the "committed by a parent or guardian" exception, each of the nine specified offense provisions describes conduct that readily corresponds to the elements of specific criminal offenses. Resort to *Nijhawan*-style circumstance-specific treatment for these categories is unnecessary and therefore inappropriate.

49. Third, the so-called "catch all" provision at subsection (I) – "Any conduct that by its nature is a sex offense against a minor" – only reinforces this conclusion. Although the provision refers to "conduct," it is only where a petitioner has been *convicted* of "conduct that by its

nature is a sex offense against a minor" that the INA's Adam Walsh Act amendments are triggered. Again, the Supreme Court's interpretation of an analogous statutory provision is instructive. In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Court was presented with the question of what it means "to be convicted at any time after admission of[,]" 8 U.S.C. § 1227(a)(1)(A)(iii), "'any other offense that is a felony and that, by its nature, involves a substantial risk'" of violence. *Id.* at 4 (quoting 8 U.S.C. § 16(b)). *Leocal* explained that "[t]his language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the underlying] crime." *Id.* at 7.

50. The parallel with Section 111(7)(I) of the Adam Walsh Act is undeniable. Thus, the BIA's insistence in the Plaintiffs' case that "the circumstance-specific approach may be used" to find that Mr. Pearson's conviction qualifies as a "specified offense against a minor" is unpersuasive. BIA Dec. at 1. Moreover, the BIA has rejected precisely this argument in the context of the child abuse ground of deportability, noting that "the statute's general purpose cannot supersede its language, which plainly focuses on those crimes of which an alien has been 'convicted.'" *Velasquez-Herrera*, 24 I&N Dec. at 513. Nor does the reference to "conduct" in subsection (I) suggest that departure from a categorical approach is warranted. Another similarly phrased statutory provision, the so-called "residual clause" of the Armed Career Criminal Act, provides for enhanced penalties for certain criminal defendants who have been convicted in the past of "any crime that ... *involves conduct* that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The Supreme Court has repeatedly reaffirmed that in determining whether to apply this enhancement, Congress intended that adjudicators "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without

26

inquiring into the *specific conduct* of [the] particular offender." *James v. United States*, 550

U.S. 192, 202 (2007) (emphasis added); *see also Sykes v. United States*, 131 S. Ct. 2267,

2272 (2011); *Chambers v. United States*, 555 U.S. 122, 125 (2009); *Begay v. United States*,

553 U.S. 137, 141 (2008). Likewise, again in the aggravated felony context, the Supreme

Court has noted that "offenses that 'involv[e]' fraud or deceit" refers to "offenses with

*elements* that necessarily entail fraudulent or deceitful conduct." *Kawashima v. Holder*, 132

S. Ct. 1166, 1172 (2012) (emphasis added). The same analysis should apply in assessing

whether a petitioner's particular conviction is a "specified offense against a minor" as

defined in the Adam Walsh Act.

51. In denying the Plaintiffs' I-130 Petition, USCIS concluded that Mr. Pearson's 1991

conviction for rape, in violation of Va. Code § 18.2-61, "meets the definition in Section

111(7)(I) in the Adam Walsh Act as 'any conduct that by its nature is a sex offense against a

minor'" and thus qualifies as a "specified offense against a minor." USCIS Dec. at 3. In

affirming the agency's decision, the BIA held that "the circumstance-specific approach may

be used to determine whether a conviction is for a disqualifying offense[.]" BIA Dec. at 1

(citing *Matter of Introcaso*, 26 I&N Dec. 304, 308-10 (BIA 2014)). For the reasons stated,

however, a circumstance-specific inquiry is inappropriate in the analysis of whether a

particular conviction qualifies as a "specified offense against a minor."

52. Employing the correct analysis – the categorical approach – it becomes clear that Mr.

Pearson's conviction is *not* a "specified offense" and thus does not bar him from petitioning

for his spouse under section 204(a)(1)(A)(viii) of the INA. Mr. Pearson was convicted on

December 13, 1991 of one count of rape, in violation of section 18.2-61 of the Code of

Virginia, which provides:

If any person has sexual intercourse with a complaining witness … and such act is accomplished:

    (i)     against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person, or

    (ii)    through the use of the complaining witness's mental incapacity or physical helplessness, or

    (iii)   with a child under age thirteen as the victim

he or she shall be guilty of rape.

As USCIS noted, Mr. Pearson admitted "to have been convicted under subsection (i)," which required a finding by the trial court that he had sexual intercourse with the complaining witness against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person. USCIS Dec. at 3. Because the relevant subsection of the statute of conviction contains no element of minority or indication of the age of the victim, under the categorical approach Mr. Pearson was not *convicted of* "any conduct that by its nature is a sex offense against a minor."

53. Under the categorical approach, determining whether a particular criminal offense qualifies as a "specified offense against a minor" requires a comparison of the elements of the statute of conviction with the elements of the relevant subsection of Section 111(7) of the Adam Walsh Act – in this case, subsection (I): "Any conduct that by its nature is a sex offense against a minor." Under controlling Supreme Court precedent, this language compels a decision-maker "to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the underlying] crime." *Leocal*, 543 U.S. at 7. Applying the categorical approach, the elements of the statute of conviction must be the same as, or narrower than, those of the generic offense in order to find a categorical match. *Taylor v. United States*, 495 U.S. 575, 599 (1990). As the Supreme Court explained recently in *Moncrieffe v. Holder*, "we employ the categorical approach, which requires us to *focus on the minimum conduct* that has a realistic probability of being prosecuted under the statute of

28

conviction, *rather than on the facts* underlying the respondent's particular violation of that statute." 133 S. Ct. at 1684-85 (emphasis added). If the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction does not qualify as a "specified offense against a minor," then the Adam Walsh Act amendments do not apply.

54. Here, the minimum conduct that has a realistic probability of being prosecuted under Va. Code § 18.2-61(i) requires proof of sexual intercourse with a complaining witness, against the complaining witness's will, by force, threat or intimidation, but it does *not* require that the victim be a minor. *See, e.g.*, *Inge v. Commonwealth*, No. 1628, 98-2, 2000 Va. App. LEXIS 457, at *6 (Va. Ct. App. June 20, 2000) *Barnett v. Commonwealth*, 216 Va. 200, 217 S.E.2d 828 (Va. 1975). Consequently, Mr. Pearson's conviction does not qualify as a "specified offense against a minor" under the categorical approach. Stated otherwise, the conduct of which Mr. Pearson was convicted – having sexual intercourse with a complaining witness where such act was accomplished against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person – simply is not "conduct that by its nature is a sex offense against a minor." Adam Walsh Act § 111(7)(I); *see also* Va. Code § 18.2-61(i).

55. The Supreme Court has also clarified when it is appropriate to employ a "modified categorical approach," which permits examination not just of the statutory elements of the offense but also of certain judicially noticeable documents in the record of conviction – including the indictment, judgment, and trial or plea transcript. In *Descamps v. United States*, 133 S. Ct. 2276 (2013), the Court held that an offense is divisible if (1) it lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to a disjunctive set of elements, more than one combination of which could support a conviction;

and (2) at least one, but not all, of the listed offenses or combinations of disjunctive elements

is a categorical match to the generic crime. *Id.* at 2281, 2283. If the statute of conviction is

meaningfully divisible, then it is permissible to conduct a "modified categorical" inquiry,

which entails an examination of admissible portions of the conviction record in order to

identify the particular offense or discrete set of elements for which the defendant was

convicted. *Id.*

56. The criminal statute under which Mr. Pearson was convicted, Va. Code § 18.2-61(i), is not

divisible in the manner required to justify application of the modified categorical approach.

Although the offense can be committed through sexual intercourse with a complaining

witness, against the complaining witness's will, under three different scenarios – by force, by

threat, or by intimidation – *none* of these disjunctive elements is a categorical match to the

"specified offense against a minor" definition at Section 111(7)(I) of the Adam Walsh Act

("conduct that by its nature is a sex offense against a minor"). Taken at its minimum,

Virginia's definition of "rape" at Va. Code § 18.2-61(i) is categorically broader than the

"specified offense" defined at Section 111(7)(I), because it includes acts committed against a

complaining witness irrespective of whether that person is a minor. Accordingly, the

modified categorical approach does not apply and the traditional categorical approach

resolves the inquiry. Under that approach, Mr. Pearson has not been convicted of a "specified

offense against a minor" and is not disqualified from petitioning for his spouse under section

204(a)(1)(A)(viii) of the INA.

### C. USCIS's Application of the INA's Adam Walsh Act Amendments to the Plaintiffs' I-130 Petition was Impermissibly Retroactive

57. USCIS's application of the Adam Walsh Act provisions of the INA to the Plaintiffs' I-130

Petition was an impermissibly retroactive application of the law. The agency's denial of the

I-130 Petition based upon a conviction that occurred on December 13, 1991 – more than 15 years prior to enactment of the Adam Walsh Act on July 27, 2006 – violates the settled presumption against retroactive legislation. *See, e.g., Vartelas v. Holder*, 132 S. Ct. 1479, 1481 (2012) ("Under the principle against retroactive legislation … courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity."); *INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) ("[A] statute that is ambiguous with respect to retroactive application is construed under [Supreme Court] precedent to be unambiguously prospective.").

58. In assessing retroactivity, the Court must first examine the legislation to determine what temporal reach, if any, Congress prescribed for the new enactment. *See Landgraf v. USI Film Products*, 511 U.S. 244, 267-68 (1994). Congress did not prescribe the temporal reach of the Adam Walsh Act provisions in question, enacted at 8 U.S.C. §§ 1154(a)(1)(A)(viii) and (B)(i)(II). Section 402 of the Adam Walsh Act says nothing about whether the provision will apply to convictions prior to the July 27, 2006 enactment date, nor does Section 111 of the Adam Walsh Act defining the specified offenses. By contrast, other provisions of the INA expressly direct retroactive application. *See, e.g.*, INA § 101(a)(43), 8 U.S.C. § 1101(a)(43) ("aggravated felony" definition applies expressly to "conviction[s] … entered before, on, or after" the statute's enactment date). The default rule when an enactment lacks a clear expression of an effective date is that the act is effective on enactment. *Johnson v. United States*, 529 U.S. 694, 702 (2000). According to the Supreme Court, "a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective." *St. Cyr*, 533 U.S. at 320 n.45. Therefore, Section 402 of the Adam Walsh Act became effective on the date of enactment – July 27, 2006.

59. Having found no express Congressional intent to apply the law retroactively, the dispositive question is whether application of the INA's Adam Walsh Act amendments "would have retroactive effect" that Congress did not authorize. *Landgraf*, 511 U.S. at 280. The established formulation for determining when retrospective application of a law would collide with the presumption against retroactivity, as articulated by Justice Story, requires an assessment of whether such application would "tak[e] away or impai[r] vested rights acquired under existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past." *Society for Propagation of Gospel v. Wheeler*, 22 F. Cas. 756, 767 (CC NH 1814). The retroactivity analysis "demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr*, 533 U.S. at 321 (internal citation omitted). Applying the Adam Walsh Act to bar a U.S. citizen-initiated petition owing to the citizen's pre-enactment conviction is unlawful because it would almost always have an impermissible retroactive effect.

60. The Supreme Court recently reaffirmed the established anti-retroactivity principle. In *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), the LPR petitioner traveled outside of the United States after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Id.* at 1483. Upon presenting himself for readmission, Vartelas was deemed inadmissible based on a conviction that occurred before IIRIRA's enactment. *Id.* The question presented was which legal regime governs: "the one in force at the time of conviction, or IIRIRA?" *Id.* Vartelas observed that "Congress did not expressly prescribe the temporal reach" of the statute in question. *Id.* at 1487. Therefore, the Court analyzed whether applying IIRIRA's travel restraint to an individual with a conviction predating its passage

would have retroactive effect that Congress did not authorize. *Id.* Stated otherwise, the

Supreme Court interpreted the lack of an express retroactive statement to mean that Congress

did *not* intend for IIRIRA's travel restraint to operate retrospectively. Identifying the date of

conviction as the relevant event, the *Vartelas* Court then analyzed whether IIRIRA's travel

restraint attached a new disability to the pre-enactment conviction. *Id.* It explained that

Vartelas "presents a firm case for application of the antiretroactivity principle" because

"[n]either his sentence, nor the immigration law in effect when he was convicted and

sentenced" would have caused the travel restraint. *Id.*

61. Here, the Plaintiffs present an equally compelling case for application of the anti-retroactivity

principle. *Vartelas* is indistinguishable from the issue presented under Section 402 of the

Adam Walsh Act; the relevant event, in both cases, is the date of the petitioner's conviction.

At the time of Mr. Pearson's conviction and sentencing in 1991, neither the conviction nor

the immigration laws blocked him from filing an immediate relative I-130 petition on behalf

of an alien spouse, nor from having that petition approved by the legacy Immigration and

Naturalization Service ("INS"). The restraint imposed on Mr. Pearson undoubtedly qualifies

as a "new disability" that interferes with a fundamental liberty interest – his right against

arbitrary interference by the government in matters of marriage and family life. Such

interference, based on conduct that occurred more than 15 years prior to the legislation that

imposed the disability, is harsh penalty indeed. *See id.* at 1487 (describing a noncitizen's loss

of the ability to travel abroad, owing to a past conviction, as a "harsh penalty"); *see also*

*Atkinson v. Att'y Gen.*, 479 F.3d 222, 229 (3d Cir. 2007) (presumption against retroactivity

violated by imposing limitation upon discretionary relief for alien based upon prior

conviction that did not carry such a disability when entered). In effect, applying the Adam

Walsh Act to bar an immediate relative petition because of a U.S. citizen petitioner's conviction that occurred before the law's effective date attaches an additional penalty to the petitioner's conviction – a penalty that existed neither at the time of the criminal conduct nor at the time the conviction was entered.

62. The Adam Walsh Act provisions of the INA are undoubtedly punitive, designed to further punish a U.S. citizen convicted of certain offenses by preventing him or her from petitioning for a spouse to reside as a lawful permanent resident in the United States. *See, e.g., State v. Williams*, 129 Ohio St. 3d 344 (Ohio Oct. 20, 2011) (finding state Adam Walsh Act registration and notification requirements punitive, not remedial, and thus impermissibly retroactive when applied to any offense committed prior to enactment of the law). Contrary to the BIA's characterizations, see *Matter of Jackson and Erandio*, 26 I&N Dec. 314, 318 (BIA 2014), there is nothing protective about the statute as applied to a petitioner – like Mr. Pearson – who is petitioning on behalf of an adult spouse with no minor children. Although Congress worded the Adam Walsh Act in terms of protecting beneficiaries from harm, the law does nothing of the sort: it does not remove the beneficiary from the petitioner's household or mandate that the beneficiary cannot live with the petitioner. The effect of the statute is solely to limit the *petitioner*'s right to file a visa petition for his spouse, which is a punitive measure designed not to protect beneficiaries but to further punish U.S. citizens for past offenses. *Cf. Smith v. Doe*, 538 U.S. 84, 100 (2003) (finding Alaska Sex Offender Registration Act non-punitive where "[t]he Act does not restrain activities sex offenders may pursue" such as changing jobs or residences).

63. The agency's retroactive application of the Adam Walsh Act imposes a new and unprecedented disability upon a past conviction as well as a new obligation by restricting the

ability of a U.S. citizen to petition for his spouse based upon conduct not of the alien spouse,

but of the U.S. citizen petitioner. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168

(1963) (listing as relevant factors in assessing whether a challenged law is punitive in nature

whether it imposes an "affirmative disability or restraint" or "appears excessive in relation to

the alternative purpose assigned"). Such a restriction was unheard of in U.S. immigration law

prior to the enactment of the Adam Walsh Act. *Cf.* 8 U.S.C. § 1154(c) (no petition can be

approved where the *alien* beneficiary has previously engaged in marriage fraud). USCIS has

radically altered U.S. immigration law by imposing a new obligation on the U.S. citizen

petitioner to demonstrate lack of dangerousness under an exacting administrative regime, a

requirement that was not present when Mr. Pearson was convicted and sentenced in 1991.

And the punitive nature of the restriction imposed cannot reasonably be characterized as

necessary to achieve the explicit legislative aims of the Adam Walsh Act, which are "to

protect children from sexual exploitation and violent crimes, to prevent child abuse and child

pornography, to promote Internet safety and to honor the memory of Adam Walsh and other

child crime victims." USCIS Dec. at 1. Prohibiting Mr. Pearson from petitioning for his adult

spouse in no way furthers the important objectives underlying passage of the Adam Walsh

Act.

### D. USCIS's Implementation of the INA's Adam Walsh Act Amendments Exceeds its Delegated Authority and is *Ultra Vires*

64. Pursuant to 5 U.S.C. § 706(2)(C), the Court must strike down as *ultra vires* agency rules

promulgated without valid statutory authority. USCIS has exceeded its delegated authority in

the following ways. First, USCIS surpassed its statutory authority when it applied the INA's

Adam Walsh Act amendments to the Plaintiffs' case because the sole beneficiary of Mr.

Pearson's petition is his adult wife, who does not have children. In addition, no children

reside with the Plaintiffs. Congress enacted the Adam Walsh Act in order to protect *children* from sexual exploitation and violent crimes. *See* Adam Walsh Act, Pub. L. 109-248 (July 27, 2006). Congress did not pass the law to protect an adult beneficiary of a petition, who is of age for voluntary consent, from his or her petitioning spouse, whom he or she voluntarily chose to marry. Thus, USCIS's application of the law to petitions for adult beneficiaries is contrary to the public policy and congressional intent behind the law. This is especially true given that no regulations have been issued to implement the Adam Walsh Act's amendments to the INA. USCIS must therefore clarify how the Adam Walsh Act is rationally applicable to cases that do not involve child beneficiaries, particularly because the agency's overbroad application of the law interferes with a fundamental liberty interest. *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (state action that interferes directly and substantially with the fundamental right to marry "cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

65. Second, USCIS exceeded its delegated authority by applying a "beyond any reasonable doubt" standard for evaluating the potential risk that a petitioner poses to his or her beneficiary spouse. The INA is silent with respect to the legal standard of proof to be used in assessing the risk element for I-130 petitions subject to the Adam Walsh Act. *See* 8 U.S.C. §§ 1154(a)(1)(A), (a)(1)(B). The Adam Walsh Act itself is silent regarding the legal standard that should be applied to cases in the immigration context. As a different standard is not specified by law, USCIS's requirement of a showing of no risk "beyond any reasonable doubt" exceeds the agency's statutory authority.

66. The "preponderance of the evidence" standard is the norm in administrative immigration adjudications unless Congress otherwise specifies. In visa petition proceedings, the burden of

proof is on the petitioner to establish eligibility for the benefit sought. *See Brantigan*, 11 I&N Dec. at 495. The standard of proof that the petitioner is required to meet is a preponderance of the evidence. *Matter of Soo Ho*, 11 I&N Dec. 151, 152 (BIA 1965). In addition to the adjudication of visa petitions, "preponderance of the evidence" is the default standard in USCIS adjudications of *all* applications for immigration benefits. In a 2010 decision, the USCIS Administrative Appeals Office emphasized that "[e]xcept where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a *preponderance of the evidence* that he or she is eligible for the benefit sought." *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) (citing *Matter of Martinez*, 21 I&N De. 1035, 1036 (BIA 1997)).

67. There are instances in which Congress *has* imposed a more burdensome legal standard. For example, the "clear and convincing" standard of proof applies to the bona fide marriage determination for marriages entered into after the initiation of removal proceedings against the beneficiary. 8 U.S.C. §§ 1154(g), 1255(e)(1), 1255(e)(3). However, in the adjudication of I-130 petitions under the Adam Walsh Act, Congress did not designate a more burdensome standard, as it did in other sections of the INA. "'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). It is therefore reasonable to assume that Congress intended for such petitions to be adjudicated under the same standard of proof that applies to visa petitions generally – the "preponderance of the evidence" standard. Alternatively, Congress meant to impose the heightened standard of proof that applies to

limitations on a petitioner's ability to obtain approval of an immediate relative petition – the "clear and convincing evidence" standard. *See, e.g.*, 8 U.S.C. §§ 1154(g), 1255(e)(3); 8 C.F.R. §§ 204.2(a)(1)(iii), 245.1(c)(8)(iii)(F).

68. The agency's application of a "beyond any reasonable doubt" standard is also contrary to Congressional intent. In requiring a showing of "no risk" to the I-130 petition beneficiary, Congress did not state that all I-130 petitions filed by individuals convicted of a specified offense against a minor should be denied. However, this is the inevitable result of USCIS's application of the "beyond any reasonable doubt" standard. This heightened standard is, in practice, impossible for a petitioner to meet because he or she cannot prove a negative – that there is "no risk" beyond any reasonable doubt – particularly when the inquiry is triggered by a prior conviction. Moreover, a psychologist or psychiatrist assessing a prior offender's risk of recidivism may find very low or even virtually no risk that the individual will reoffend, but is unlikely to conclude that there is no risk beyond any reasonable doubt.[3]

69. The "beyond any reasonable doubt" standard is nowhere present in administrative immigration proceedings because it is, primarily, a criminal law evidentiary standard. It is impermissible for USCIS to apply this heightened legal standard to civil adjudications. *See Tyler v. Cain*, 553 U.S. 656 (2001); *Addington v. Texas*, 441 U.S. 418 (1979); *Kirby v. United States*, 174 U.S. 47, 55 (1899). Although civil proceedings, which may result in the "drastic impairment of the liberty and reputation of an individual," can be governed by the "beyond a reasonable doubt" standard, the burden in these cases is placed on the "accuser," and not the "accused." *See In re Winship*, 397 U.S. 358, 364, 369-72 (1970); 9 WIGMORE

---

[3] Plaintiffs' counsel is unaware of any cases in which USCIS has approved an I-130 petition filed by a petitioner convicted of a specified offense against a minor, based on the agency's determination that the petitioner successfully demonstrated beyond any reasonable doubt that he or she poses no risk to the intended beneficiary.

EVIDENCE § 2498 (Chadbourn rev. 1981). However, USCIS is imposing this standard on the accused, requiring a U.S. citizen petitioner to meet a practically unattainable standard of proof – that it is "beyond any reasonable doubt" that he poses no risk to his beneficiary spouse. This requirement is inappropriate in a civil immigration proceeding. Consequently, the agency has exceeded its statutory authority in applying the "beyond any reasonable doubt" standard to the adjudication of I-130 petitions subject to the Adam Walsh Act. For the above reasons, USCIS's application of the INA's Adam Walsh Act amendments to the Plaintiffs' I-130 Petition exceeds the agency's statutory authority and is *ultra vires* to the statute.

### E. USCIS's Denial of Plaintiffs' I-130 Petition under the Adam Walsh Act Violates Mr. Pearson's Constitutionally Protected Liberty Interest in Marriage and Family Life

70. The fourth ground of relief is premised on USCIS's unwarranted interference with the Plaintiffs' protected liberty interest in marriage. Although Congress has broad plenary power to regulate noncitizens and their immigration to the United States, such plenary power cannot be extended to regulate *U.S. citizens* in a way that infringes their fundamental rights. *See Mathews v. Diaz*, 426 U.S. 67, 78-80 (1976) (recognizing that in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens). Here, the Adam Walsh Act amendments to the INA go beyond the plenary powers afforded to regulate noncitizens, as they impose restrictions and limits on United States citizens. Arbitrarily depriving Mr. Pearson of the right to petition for his spouse interferes with his fundamental rights and is a violation of due process.

71. The Supreme Court has declared that the right to marry is a basic right, vital to humanity's very existence and survival and is part of the fundamental right to privacy. *See Zablocki*, 434

U.S. at 388; *Loving*, 388 U.S. at 12. USCIS's application of the Adam Walsh Act to the

Plaintiffs' I-130 Petition infringes on Mr. Pearson's constitutional right to marry and on the

married couple's pursuit of happiness, because it intrudes upon the recognized liberty interest

to make personal choices with regard to marriage and family matters free from unjustifiable

government interference. When legislation burdens a group's exercise of a fundamental right

in violation of substantive due process, a heightened level of review applies. *Zablocki*, 434

U.S. at 388. Accordingly, regulation of the Plaintiffs' choices related to their marriage must

survive this heightened scrutiny, whereby the government must demonstrate that the law as

applied is narrowly tailored to achieve a compelling governmental interest. *See Washington*

*v. Glucksberg*, 521 U.S. 702, 726 (1997) (declaring "personal decisions relating to marriage"

among "certain fundamental rights" subject to substantive due process review); *see also*

*Plyler v. Doe*, 457 U.S. 202 (1982). Application of the Adam Walsh Act to adult, married

couples who have no children fails to satisfy a compelling interest sufficient to overcome the

unconstitutional interference with their due process rights.

72. Even though the Adam Walsh Act does not prevent marriage itself, its application to the

Plaintiffs is a violation of due process because its effect is to prevent them from living

together in marital union in the United States. In an analogous case, the Supreme Court

invalidated a sterilization law because it infringed on a fundamental right to marriage and

procreation of some criminals, but not others. *See Skinner v. Okla. Ex rel. Williamson*, 316

U.S. 535 (1942). More to the point, the Ninth Circuit has recognized a U.S. citizen

petitioner's due process challenge to the denial of her spouse's immigrant visa, based on her

protected liberty interest in "[f]reedom of personal choice in matters of marriage and family

life." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). The Plaintiffs are

lawfully married and have affirmatively chosen to build a life together. USCIS's application

of the Adam Walsh Act to deny their I-130 Petition will have the effect of compelling Ms.

Pearson to leave the United States, resulting in the Plaintiffs' certain separation. It cannot

have been Congress's intent in enacting the Adam Walsh Act to permit Mr. Pearson to have a

married life with a U.S. citizen but not with a noncitizen.

73. The Plaintiffs concede that the law of this Circuit is not in their favor. More than 50 years

ago, in *Swartz v. Rogers*, 254 F.2d 338 (D.C. Cir. 1958), the D.C. Circuit rejected the

argument that deportation of a noncitizen husband would violate the due process rights of his

U.S. citizen wife owing to the interference with her right to marry and establish a home and

family in the United States. *Id.* at 339. The Court explained:

> Certainly deportation would put burdens upon the marriage. It would impose upon
> the wife the choice of living abroad with her husband or living in this country
> without him. But deportation would not in any way destroy the legal union which
> the marriage created. The physical conditions of the marriage may change, but the
> marriage continues.

*Id.* And this Court has extended *Swartz* beyond deportation to the immigrant visa context,

holding that "denial of the applicant's visa application does not infringe upon the applicant's

wife's marital relationship with her husband because the defendants have 'done nothing more

than to say that that the residence of one of the marriage partners may not be in the United

States.'" *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 105-06 (D.D.C. 2011) (quoting

*Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970)). At least one court outside this

circuit has reached the opposite conclusion, finding that denial of an immigrant visa *can*

implicate a U.S. citizen petitioner's constitutionally protected liberty interest in her marriage

and thus give rise to a due process claim. *See, e.g.*, *Din v. Kerry*, 718 F.3d 856, 868 (9th Cir.

2013) ("Din has a constitutionally protected due process right to limited judicial review of

her husband's visa denial, which stems from her '[f]reedom of personal choice in matters of marriage and family life.'"), *cert. granted*, *Kerry v. Din*, 2014 U.S. LEXIS 4911 (Oct. 2, 2014) (No. 13-1402); *Bustamante*, 531 F.3d at 1062.

74. The cursory analysis provided in *Swartz* and its progeny should be reexamined, because that analysis fails to distinguish between two separate issues. The first is whether the Due Process Clause affords some protection to a U.S. citizen's choice of whether and where to live with his spouse. The second is whether that protection – if it exists – is robust enough to outweigh a competing government interest (represented by the Adam Walsh Act amendments to the INA) that restricts the liberty. The distinction is significant and merits closer scrutiny. Whereas it is cannot reasonably be disputed that the right to marry is of fundamental importance, whether the government may validly restrict or interfere with that liberty is a separate question. *See Zablocki*, 434 U.S. at 384-87. For example, the Supreme Court has recognized that a state may legitimately prohibit marriages between siblings or polygamous marriages. *Id.* at 392 (Stewart, J., concurring in the judgment). But such valid restrictions do not "extinguish[] altogether" the liberty interest at stake. *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972).

75. The Plaintiffs assert that Mr. Pearson has a constitutionally protected liberty interest in choosing where to live with his spouse and that the Adam Walsh Act amendments unreasonably restrict that right, because they prevent the Pearsons from living together in the United States. *Swartz*'s conclusion that a forced separation of husband and wife "would not in any way destroy the legal union which the marriage created," 254 F.3d at 339, is undermined by the Supreme Court's recent pronouncement that "marriage is more than a routine classification for purposes of certain statutory benefits" but is, instead, an "intimate

relationship between two people." *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013). As such, the marital relationship necessarily involves the choices of whether and where to live together, as confirmed by nearly a century of Supreme Court jurisprudence. *See, e.g.,* *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (finding "[w]ithout doubt" that the liberty protected by the Constitution includes the freedom "to marry, establish a home, and bring up children"); *see also Griswold*, 381 U.S. at 484-86; *Moore*, 431 U.S. at 499-503. Whether and to what degree the government can legitimately regulate the marital relationship is a separate question; that a given restraint on marriage may be permissible does not eliminate the constitutionally protected liberty interest of a married couple to, among other decisions, "establish a home" in the United States. *Meyer*, 262 U.S. at 399. It is this interest that underlies the Plaintiffs' due process claim, and the government's interference with that liberty interest – via the Adam Walsh Act amendments to the INA – merits appropriate scrutiny by this Court.

## VII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A. Declare unlawful and set aside Defendant USCIS's decision to deny the Plaintiffs' I-130 Petition;

B. Remand to USCIS for findings in accordance with this decision under 5 U.S.C. § 702 and approval of the Plaintiffs' I-130 Petition;

C. Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act ("EAJA");

D. Grant such other and further relief as this Court deems proper.

Respectfully submitted this 23rd day of April, 2015.


_____/s/  *Thomas K. Ragland*_____
Thomas K. Ragland
D.C. Bar No. 501021
BENACH RAGLAND LLP
1333 H Street, NW – Suite 900 West
Washington, DC  20005
Tel: (202) 644-8600
Fax: (202) 644-8615
tkragland@benachragland.com

*Counsel for Plaintiffs*